IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHANNON G. M., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KILOLO KIJAKAZI,[1] Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 21-cv-00259-SH |

# **OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Shannon G. M. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

Plaintiff applied for Title II disability benefits in 2008. (R. 118, 259-60.) In his application, Plaintiff alleged he had been unable to work since April 4, 2008, due to conditions including multiple back fractures and a discectomy. (R. 259, 285.) Plaintiff was 33 years old at the time of the Administrative Law Judge's ("ALJ") first decision. (R. 126, 259.) Plaintiff has a high school education and past relevant work as a tree trimmer and molding press operator. (R. 289, 579, 594.)

Plaintiff's claim for benefits was denied initially and upon reconsideration. (R. 140-43, 147-49.) Plaintiff then requested a hearing, which the ALJ conducted on November 24, 2009. (R. 72-106, 150-51.) After the hearing, the ALJ denied benefits and found Plaintiff not disabled. (R. 118-26.) However, the Appeals Council remanded the case for resolution of certain additional issues. (R. 109-13.)

On remand, the ALJ held a second hearing on May 17, 2016. (R. 40-71.) Thereafter, she issued a decision denying benefits and again finding Plaintiff not disabled. (R. 20-33.) While the Appeals Council initially denied review (R. 8-12), after Plaintiff appealed, the Commissioner moved to remand the matter back to the ALJ for further

consideration (R. 604-05, 615-16). The Commissioner's motion was granted and the Appeals Council, for a second time, remanded the matter.[2] (R. 613-14, 618-21.)

A new ALJ held a third hearing on December 1, 2020. (R. 567-601.) Again, the ALJ issued a decision denying benefits. (R. 541-58.) Plaintiff filed no exceptions, and the Appeals Council declined to assume jurisdiction, rendering the decision final on April 23, 2021. *See* 20 C.F.R. § 404.984(c)-(d). Plaintiff appeals.

### III. The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through June 30, 2011. (R. 544.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity between the alleged onset date of April 4, 2008, and his date last insured. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: (1) lumbar degenerative disc disease, (2) obesity, and (3) hypertension. (R. 544-46.) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 546-47.)

After considering certain evidence, the ALJ concluded that Plaintiff had the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a)" with numerous physical and environmental limitations. (R. 547.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 547-56.) At step four, the ALJ found Plaintiff unable to perform his past relevant work as a tree trimmer or molding press operator. (R. 556.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as document preparer, touch-up screener, and semi-

---

[2] Plaintiff does not argue the ALJ failed to comply with this Appeals Council Order. *See Noreja v. Comm'r*, 952 F.3d 1172, 1178 (10th Cir. 2020) (review of non-compliance with an Appeals Council order is within the court's jurisdiction under 42 U.S.C. § 405(g)).

conductor bonder. (R. 556-58.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 558.)

## IV. Issues

Plaintiff raises two allegations of error in his challenge to the denial of benefits: (1) the ALJ's RFC findings were not based on substantial evidence (ECF No. 13 at 5-11); and (2) the ALJ failed in her evaluation of Plaintiff's symptoms (*id*. at 11-15). Having considered these arguments, the Court disagrees. Because Plaintiff has not articulated any reversible error, the ALJ's decision is affirmed.

## V. Analysis

### A. Sufficiency of Evidence Supporting Plaintiff's RFC.

In his briefing, Plaintiff's primary contention is "that the ALJ's RFC determination is not based on substantial evidence and should not be followed by the Court." (*Id*. at 6.) Plaintiff offers three arguments in support of this claim, two of which will be addressed in this section.[3] Because neither of these arguments is persuasive, Plaintiff's complaints about the RFC evaluation are rejected.

#### 1. Consideration of prior administrative medical findings

First, Plaintiff contends the administrative physicians "imply a finding of disability for at least one year from his onset date." (*Id*.) Plaintiff then argues the ALJ failed to properly incorporate this "implied" finding into her RFC determination. (*Id*. at 6-9.) Under Plaintiff's reasoning, if he was found disabled during some period in 2008, the ALJ erred by failing to apply the regulations that govern the periodic review of whether a disabled individual's benefits should continue or end. (*Id*. at 8-9 (citing 20 C.F.R. §

---

[3] The third contention—that the "ALJ's RFC does not take into account Plaintiff's pain, . . . his need to change positions and . . . lay down several times a day[,]" or his inability "to sit for prolonged periods" (*id*. at 6-7)—is addressed *infra*. *See* Section V(B).

5

404.1594).) Here, however, Plaintiff was never awarded disability benefits, and there has been no prior finding of disability. Thus, Plaintiff offers no basis to dispute the ALJ's RFC findings.

Fifteen years ago, in his application for Title II disability benefits, Plaintiff alleged he became unable to work on April 4, 2008. (R. 259.) Less than a year after his alleged onset date (R. 459, 513), Plaintiff's claim was reviewed by State Agency physicians Suzanne Roberts and Thurma Fiegel. (R. 452-59 (Sept. 25, 2008), 506-13 (Jan. 15, 2009).) At both the initial review and reconsideration stage, Drs. Roberts and Fiegel determined Plaintiff could perform light work as of "12 Months After Onset," or "04/04/2009." (R. 452, 506.) Neither doctor offered an opinion as to Plaintiff's RFC for any other date.

It makes sense that Drs. Roberts and Fiegel would be focused on a date one year after the alleged onset of Plaintiff's disability. By statute, a disability must be something expected to result in death or which "has lasted or can be expected to last" for 12 or more months. 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1509 (referring to this as "the duration requirement"). "When the application is being adjudicated . . . before the impairment has lasted 12 months," the Commissioner still must determine whether it "will continue to prevent the individual from engaging in any [substantial gainful activity] . . . for the additional number of months needed to make up the required 12 months duration . . . ." Social Security Ruling ("SSR") 82-52, 1982 WL 31376, at *2 (Jan. 1, 1982). Without the 12-month duration, there is no disability for which benefits could be awarded. By determining Plaintiff could perform light work at the one-year mark, the agency doctors essentially determined he was not disabled. Tellingly, the same day each opinion was issued, Plaintiff's claim for disability benefits was denied by the

6

Administration. (R. 140-43, 147-49.) While it may have been implied that Plaintiff's RFC would show "improvement" to the level of light work within one year (R. 621[4]), as Plaintiff acknowledges, neither doctor offered any opinion as to Plaintiff's RFC before that date (ECF No. 13 at 7-8[5]).

Because there was no final agency finding of disability, Plaintiff's arguments regarding 20 C.F.R. § 404.1594 fail. The cited regulation applies the statutory requirement that, if a claimant is "entitled to disability benefits, [his] continued entitlement to such benefits must be reviewed periodically." 20 C.F.R. § 404.1594(a). In deciding whether to discontinue benefits, the Commissioner engages in a nine-step evaluation process. *Id.* § 404.1594(f). If the Commissioner finds the claimant no longer disabled, then benefits will cease on a certain month (and after the claimant has had a right to appeal). *Id.* § 404.1594(g)-(h). None of this applies here, where Plaintiff was never found disabled and never received any disability benefits that could be discontinued.

Instead, the ALJ conducted a review of disability under the five-step evaluation process of 20 C.F.R. § 404.1520. As part of that process, the ALJ evaluated the medical opinions of Drs. Roberts and Fiegel under 20 C.F.R. § 404.1527, considering various factors to determine the weight to be given their opinions. *Id.* § 404.1527(c). Plaintiff points to no error in the ALJ's weighing of these medical opinions.

---

[4] Appeals Council Order: "In giving significant weight to these opinions [of Drs. Roberts and Fiegel] . . . the [prior ALJ] did not explain how he considered the predictive nature of these opinions that they expected improvement to light work by April 2009 . . . ." (R. 621.)

[5] Plaintiff's Opening Brief: "Note, the DDD physicians do not state that the Plaintiff was capable of a Light RFC, or any RFC during the one year after his onset." (ECF No. 13 at 7-8.)

### 2. Necessity of testimony from a medical advisor

Next, Plaintiff argues the ALJ erred when she refused to call a medical advisor to testify at the hearing. (ECF No. 13 at 9.) The ALJ had no such obligation in this case, and Plaintiff's argument is unpersuasive.

Prior to the 2020 hearing, Plaintiff requested a medical advisor appear and testify, invoking the ALJ's duty to fully and fairly develop the record under *Hawkins v. Chater*, 113 F.3d 1162 (10th Cir. 1997). (R. 733.) Plaintiff generally argued that "medical advisors at the hearing . . . would assist the ALJ in determining the claimant's [RFC] prior to the date last insured," which by that point was nine years in the past. (*Id.*) The ALJ declined Plaintiff's request, noting that Plaintiff "fails to identify a circumstance supporting the necessity for either" a consultative examination ("CE") or the testimony of a medical expert or advisor. (R. 542.)

"The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). Still, the ALJ has a basic obligation in every case to develop the record consistent with the issues raised. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008). This duty "is one of inquiry, ensuring that the ALJ is informed about facts relevant to [her] decision and learns the claimant's own version of those facts." *Id.* (quoting *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 361 (10th Cir. 1993)). The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment." *Hawkins*, 113 F.3d at 1168.

An ALJ has broad latitude in ordering CEs or seeking the opinion of medical experts. *Simien v. Astrue*, No. 06-5153, 2007 WL 1847205, at *3 (10th Cir. June 28, 2007) (unpublished).[6] Even so, an examination may be required when there is a "direct conflict in the medical evidence requiring resolution, [] where the medical evidence in the record is inconclusive, . . . [or] where additional tests are required to explain a diagnosis already contained in the record . . . ." *Hawkins*, 113 F.3d at 1166 (citations omitted); *see also* 20 C.F.R. § 404.1519a (current regulation governing purchase of CEs). Similarly, an ALJ may be obligated to call a medical advisor if the claimant's onset date is ambiguous and the advisor's testimony is necessary to infer an onset date. *See Wiederholt v. Barnhart*, 121 F. App'x 833, 837 (10th Cir. 2005) (unpublished). The Hearings, Appeals, and Litigation Law Manual ("HALLEX") provides additional guidance on when an ALJ must (or may) obtain a medical expert's opinion. *See* HALLEX I-2-5-34. Mandatory circumstances are limited to: when ordered by the Appeals Council or a federal court; when there is a question about the accuracy of medical test results; or when the ALJ is considering finding the claimant's impairments medically equal a listing. HALLEX I-2-5-34(A)(1). Otherwise, the ALJ may typically use her discretion. *See* HALLEX I-2-5-34(A)(2).

On reply, Plaintiff acknowledges that "the ALJ did not have to call a Medical Advisor . . . ." (ECF No. 15 at 2.) Such an admission should resolve this issue in the Commissioner's favor. Still, the Court finds the ALJ did not abuse her discretion or fail to fulfill any mandatory obligation. Plaintiff argues a medical advisor would have been "better able to delineate the Plaintiff's medical condition"; could explain "what the DDD

---

[6] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

9

physicians meant when they found that Plaintiff's RFC was not effective until one year after the onset date"; and "would have helped in determining the degree of severity of the Plaintiff's physical impairments." (ECF No. 13 at 10.) Otherwise, Plaintiff argues the evidence in this case was inconclusive. (*Id.* at 11.)

The issue before the ALJ was Plaintiff's RFC from April 4, 2008, to June 30, 2011. To determine this, the ALJ had Plaintiff's function reports and testimony from three separate occasions in 2009, 2016, and 2020 (R. 40-106, 324-31, 567-601); medical records from the dates at issue (*see, e.g.*, R. 434-42, 445-46, 449-50, 461-67, 478, 519-21, 536-37); and medical opinions from 2008, 2009, and 2010 (R. 452-59, 506-13, 523-35). The ALJ gave limited weight to the first two medical opinions, which predicted Plaintiff would be capable of light work within a year of onset. (R. 553.) The ALJ gave significant weight to the 2010 opinion, which found Plaintiff only capable of sedentary work. (*Id.*) There is nothing in the record indicating a meaningful change in the severity of Plaintiff's condition from 2008 to 2011 (other than acute post-surgical improvement), and no basis to find that the evidence available was insufficient for the ALJ to make a decision regarding Plaintiff's RFC. Instead, the ALJ had ample contemporaneous evidence, and there would be little value to the testimony of a medical advisor almost a decade later. Moreover, any argument regarding the State Agency physicians has been previously rejected.

**B.   The ALJ's Symptom Analysis.**

Finally, Plaintiff argues the ALJ's symptom (or consistency) analysis was contrary to law. (ECF No. 13 at 11-15.) The Court rejects Plaintiff's arguments and finds no error.

**1.   The Assessment of Symptoms**

Generally, when evaluating a claimant's symptoms, the ALJ uses a two-step

10

process.[7] *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529 (regulation governing the evaluation of symptoms). First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities that could reasonably be expected to produce the symptoms alleged. SSR 16-3p, at *3. Second, once such impairment(s) are established, the ALJ must evaluate the intensity and persistence of the symptoms so she can determine how they limit the claimant's capacity to work. *Id.* at *4.

Factors the ALJ should consider as part of the symptom evaluation include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.* at *7-8. The ALJ's findings regarding symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan*, 552 F.3d at 1190 (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). However, a "formalistic factor-by-factor recitation of the evidence" is not required where the ALJ states "the specific evidence [she] relies on" in the evaluation. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations

---

[7] Tenth Circuit precedent has characterized this as a three-step process, citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012). The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*. *Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). The term "credibility," however, is no longer used. SSR 16-3p, at *2.

when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).[8]

## 2. The ALJ's symptom analysis

Here, the ALJ's opinion adequately accounted for Plaintiff's symptoms. After finding his lumbar degenerative disc disease, obesity, and hypertension severe at step two (R. 544-46), the ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms" (R. 548). Next, the ALJ considered whether Plaintiff's subjective statements regarding his impairments, when evaluated alongside other objective evidence, led to the conclusion that Plaintiff was disabled. Though she ultimately found that "claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (*id.*), the ALJ sufficiently considered Plaintiff's subjective complaints. Specifically, the ALJ weighed Plaintiff's daily activities (R. 548, 551[9]); the location, duration, frequency, and intensity of Plaintiff's

---

[8] That is not to say the ALJ may simply make "a single, conclusory statement" that symptoms have been considered or that the claimant's statements are/are not consistent. SSR 16-3p, at *10. Rather, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*.

[9] The ALJ discussed Plaintiff's testimony and function report. Plaintiff indicated he could live independently, brush his teeth, shower, dress himself, and attend doctor appointments. (R. 548.) The ALJ also noted, however, that Plaintiff testified to laying down two-or-three times a day for thirty minutes at a time; needing his sister and mother to perform his household chores, cook, and shop for him; and spending the majority of his day watching television and resting. (*Id.*) The ALJ noted that some of this testimony is contrary to his November 2008 *Function Report*, where he stated he could fix meals and clean up his house some. (R. 551.) Further, while Plaintiff reported getting help with household chores and shopping, the ALJ found that he did not receive this help daily—instead, needing assistance every week or every other week—and was otherwise able to go out on his own. (*Id.*)

12

symptoms (R. 548-52[10]); precipitating and aggravating factors (R. 548-51[11]); the type, dosage, effectiveness, and side effects of medications (R. 549-50[12]); the other treatment he received for symptom relief (R. 548-51[13]); and other factors concerning Plaintiff's functional limitations and restrictions due to pain (R. 552[14]).

---

[10] The ALJ noted Plaintiff's testimony that he had back pain and a burning and shooting sensation that prevented him from sitting for more than an hour and standing or walking for more than forty minutes. (R. 548.) The ALJ also noted Plaintiff's testimony that he needed to lay down a few times a day for thirty minutes and that he could not lift more than a gallon of milk. (*Id.*) The ALJ noted Plaintiff's post-discectomy treatment with medical providers, where he continued to experience pain, persistent stiffness, and muscle spasming that worsened with bending, stooping, and lifting; weakness in his right leg; and limited range of motion, tenderness to palpation, burning pain with activity, and pain with sitting, standing, and walking. (R. 549-51.) The ALJ also observed, however, that after surgery Plaintiff reported that while his pain continued, it was "much better" and "nothing like before the operation"; that he, at times, displayed good range of motion in his back, hips and legs, full strength in his upper and lower extremities, ambulated with a normal gait and had normal heel and toe walking; that he reported "getting better every day" and was able to walk farther and ambulate without a cane; and that, at times, he displayed negative straight leg raises. (R. 549-52.)

[11] The ALJ noted Plaintiff's reports of aggravating factors such as walking, sitting, standing, lifting, bending, stooping, flexion, and doing housework and other daily activities. (R. 548-51.)

[12] The ALJ noted that, at times during Plaintiff's course of treatment, he was prescribed anti-inflammatories, pain medication, and muscle relaxers to varying effect. (R. 549-50.)

[13] The ALJ noted that Plaintiff underwent a discectomy in June 2008. (R. 549.) Further, though it was recommended (R. 549), the ALJ noted that Plaintiff indicated he could not engage in physical therapy because he lacked insurance. (R. 548.) The ALJ discussed that while Plaintiff used a cane, he was never prescribed one by a doctor. (*Id.*) The ALJ also noted the year-and-a-half gap in Plaintiff's treatment between 2008 and 2010. (R. 550-51.)

[14] In addition to the functional limitations discussed above, the ALJ noted that in his consultative examination of Plaintiff, Dr. Subramaniam Krishnamurthi did not indicate Plaintiff had a limitation in his ability to shop, travel without a companion, walk a block at a reasonable pace on rough or uneven surfaces, climb a few steps at a reasonable pace, prepare simple meals, care for himself, or sort and handle papers and files. (R. 552.) The ALJ also noted that despite Plaintiff's debilitating reports of pain, he indicated he helped his mother while she was sick and babysat. (*Id.*) Further, the ALJ noted Plaintiff's testimony that during his time in prison—shortly after the date last insured—he was assigned a work detail and had no special accommodations. (*Id.*)

Only in light of this analysis did the ALJ hold that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not wholly consistent with the record. This was an adequate evaluation under the regulations and SSR 16-3p.

### 3. Alleged errors in the ALJ's symptom analysis

In his brief, Plaintiff identifies four purported flaws in the ALJ's assessment of his symptoms. (ECF No. 13 at 13-15.) Each focuses on the ALJ's consideration of evidence within that analysis. Because the undersigned finds the ALJ's symptom evaluation to have been proper, there was no error.

First, Plaintiff maintains that "the ALJ never considered the Plaintiff's cognitive impairments because the ALJ erroneously found that those impairments were non-severe." (*Id*. at 13.) Plaintiff, however, does not develop this argument, and a cursory review of the ALJ's decision reveals the claim to be unsubstantiated.[15]

The ALJ found Plaintiff's anxiety and panic disorders to be non-severe at step two (R. 544) yet conducted a sufficient RFC evaluation of Plaintiff's mental impairments at step four (R. 545-46). While the ALJ's analysis was grouped with paragraphs at step two assessing Plaintiff's mental impairments, the ALJ recognized that the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment" and that the RFC "assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed" evaluation. (R. 545.) As such, she went on to consider how the record evidence of Plaintiff's mental impairments affected his RFC. (R. 545-56.) Evidence she considered included Plaintiff's hearing testimony, statements contained in his *Function Report*, medical examinations, prescribed medications, and the findings of

---

[15] *See Sturgeon v. Colvin*, No. 15-CV-52-PJC, 2016 WL 1248905, at *5 (N.D. Okla. Mar. 29, 2016) ("[a] Social Security claimant must adequately develop arguments before a district court" (citing *Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009)).

14

the State Agency psychological consultants. (*Id.*) Again, though this portion of her RFC analysis is not grouped in the same paragraphs as her evaluation of Plaintiff's physical impairments, the ALJ clearly considered Plaintiff's mental conditions. (R. 546 (concluding that, as a result of this review, "the residual functional capacity assessed contains no mental limitations").) The Court cannot agree that "the ALJ never considered the Plaintiff's cognitive impairments".

Moreover, even if the ALJ erred by including her step-four evaluation of Plaintiff's cognitive impairments in her step-two discussion, such error was harmless. As the undersigned "can follow the adjudicator's reasoning," it declines to "insist on technical perfection." *Keyes-Zachary*, 695 F.3d at 1166. Plaintiff does not argue any functional restrictions resulted from his mental impairments. The Court, therefore, finds no error.

Second, Plaintiff also briefly argues the ALJ improperly relied on Plaintiff's daily activities to establish his RFC, when "it is unlikely that Plaintiff, every day, engages in all the activities she identified." (ECF No. 13 at 14.) Specifically, Plaintiff notes that the Tenth Circuit has held multiple times that the "sporadic performance [of activities] does not establish that a person is capable of engaging in substantial gainful activity." *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987). Yet Plaintiff cites no portion of the record indicating the frequency with which Plaintiff engages in the activities cited by the ALJ. Moreover, Plaintiff's reliance on these cases is misplaced. As discussed *supra*, nn.9-14, the ALJ relied on much more than Plaintiff's activities to support her symptom findings.

Third, Plaintiff argues that the ALJ failed to weigh the factors of treatment, daily activities, and medication in her assessment. (ECF No. 13 at 14.) However, these factors were affirmatively weighed by the ALJ. (*See supra* n.13 (treatment), n.9 (daily activities), n.12 (medications).)

Lastly, Plaintiff briefly argues that the ALJ based her symptom evaluation on a "selective determination of the facts." (ECF No. 13 at 14.) "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Instead, the ALJ "is required to discuss the uncontroverted evidence not relied upon and significantly probative evidence that is rejected." *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007). Plaintiff points to no evidence ignored by the ALJ. The Court finds no error.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 1st day of March, 2023.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT